Good morning, Your Honor. Attorney Scott Hubbard, representing the appellants with me is my father, Attorney Lynn Hubbard. He will be discussing Mr. Muldown's case in the opening remarks. I know the Court's familiar with the briefs and the issues, so what we would like to talk about is the underlying facts of this case, at least the nuances, but what we need to talk about first is the construction of the UNRRA Act and the Disabled Persons Act, i.e. the law. If the Court has any questions on that issue first, my humble opinion, we do need to address them, because that is almost the crux of Muldown and Park's arguments. We are of the opinion, notwithstanding the 28J letter, that the plain language of the Act and this Ninth Circuit's prior holding in Lentini v. the California Center of the Arts and Goldman v. I think its standard insurance company, that all of the rights of the Americans with Disabilities Act were incorporated into those two state acts and that the definition of disability of the California government code was likewise incorporated. If the panel has any questions regarding that, I'd like to discuss them now. Otherwise, I'm going to turn the matter over to my father. I don't have any questions. Any questions? No. Thank you. We'll hear from the older generation. Thank you. Judges, John Muldown became disabled on the job. That's indisputed. He requested three simple things when he became disabled. One was a job that would allow him to retain his retirement benefits. The second was a job that would be cleared by his health care practitioner. And, of course, the third thing was that he not be retaliated against because of his disability. He was aware of numerous jobs that he could have performed that would have satisfied these three requirements, background investigator, evidence technician, control room bailiff, records clerk, and whatnot. He met extensively with the county and they offered him one job. And that simple job was jail room officer. And they even maneuvered his benefits to prove that, in fact, he could do this job. In other words, they weren't going to penalize him financially to become a jail room officer, which means they can do that if they really want. Of course, his health care practitioner said, wait, you can't do that. You're going to be in there with inmates. It's going to require a physical problem, so I won't sign off on that job. That was the only job he was ever offered. We have all these other jobs and by the appellees. Were all the other jobs filled? Were they vacant? Were the positions open? Or just have you decided the description of that job? Hey, that sounds like it would work. They were discussed with Mr. Modown by the county. Certainly, they wouldn't have discussed those jobs with him if they weren't available. But going even a step further, if we look at the appellee's supplemental record that they filed at page 164 and 165, they even admit in that record that he could have done any job in the county. They were all available. He was offered no jobs, not one job. He was offered no assurance or apparently no vehicle where he could raise a complaint if somebody tried to retaliate against him based on his disability. And our feeling is there must have been some job somewhere in the county they could have offered Mr. Modown. He was forced to take retirement. It's undisputed that that early retirement cost him $454,000. No matter how many good intentions they say they have, they really didn't offer him anything. And I'll submit it. Unless you have questions you'd like me to address. I'm here to be in. We'll hear from you. Age before beauty. Dealing with Bass and Parks, two points I wanted to make. With respect to Bass, a lot of the factual findings of the district court below turned out not to be true. It wasn't by design or even negligence. It's just the events that occurred in the years that followed the district court's entry of judgment didn't bear out to the evidence. If given a choice between the pain of ---- Well, how does that ---- how is that pertinent? It is our ---- if we are reviewing the district court's decisions, aren't we reviewing them for their correctness or not at the time they were made based on the record that was then before the court? It was, Your Honor. We did the creatio indication. The district court indicated that it was not inclined to review the order. It was before that court. I haven't gotten a copy of the district court's order, so I haven't had a chance to present it to you. It occurred within the last day or so, and I've been preparing for this oral argument. Well, what ---- procedurally, what effect does that have on, if any? Why is that pertinent? Is that the subject of a new appeal, or is that pertinent to what we're doing? I don't believe it's subject to a new appeal. I do believe, though, that it would warrant remand down to the district court for further to work, and she could only work with a dragon-speak dictate machine. And it turns out, if given a choice between working in pain or starving, she'd rather work in pain. I understand what you're saying factually, but here's my issue with it. If a district court makes a decision based on the record that's been developed up to the date of the decision, that decision becomes final and it's appealed. Aren't we limited to the record up to the time of the district court's decision, the correctness of which is at issue, and can't come in and say, well, as it turned out two years later, in hindsight, we now know something new. I mean, otherwise, it's endless. I don't know what you are asking us to do, I guess. There are instances that I've been aware of where a change in circumstance has caused the remand of a matter back to the district court for further finding. The only one that springs to mind as I stand here is Pickering v. Holiday Quality Foods. That's at 293, and I'll give the clerk the site afterward. It's at 293 F. 3rd, 1133. It's a Ninth Circuit case, 2002. During oral argument, the appellees, Holiday Quality Food, came to oral argument and said, Your Honors, we fixed everything. There's been a change in circumstance. It's moot. Well, the Court, this Court is not in a position for a factual finding, so this Court remanded it. Sotomayor, isn't that a different situation, though? Because if something is moot, then we would lack the Article III permission to decide it because it would be only advisory. And what you're saying is, well, it's still a lie of controversy. It's just that the judge was wrong, and we have more ways to show that the judge was wrong than we used to. Aren't those two situations different? I think they can be distinguished in that respect, but I think from a procedural standpoint, admittedly, this panel knows far more about the credo indications than I do. If the Court's of that opinion, then fair enough. I really am asking because this is not an issue that was briefed, and I'm not ---- It wasn't, and that's actually why I was going to suggest the remand for further factual finding to the district court on this issue. If the Court believed that she was too disabled to work from the pain or that she could only work with the Dragon's Feet Dispute, and it turns out both facts just they could not be raised below at that point in time because she was just ending the dispatcher job, there was no way for us to present it any sooner, that perhaps that warrants a further remand to develop the record, allow further briefing, allow further testimony and evidence so this Court can make an informed decision. That's one recommendation. With respect to Parks, if this Court agrees that Title I is employment discrimination was incorporated in the UNRRA Act or Disabled Persons Act, or both, and that the term disability was adopted from the Government Code section, which limited the major life function instead of substantial limited major life function, then Parks presented evidence that no one, well, he's presented evidence of the discrimination of the county of improper job criteria, failure to promote, failure to hire, failure to employ the disabled individuals. The district courts determined that that was factual finding under the judicial notice. We didn't ask the Court to take judicial notice of that as a factual finding. That was a county discovery response that was based on county testimony and county documents that were verified. It wasn't a factual finding by the Court. It was a judicial notice of a county admission that was in the Court's own records. And that's what, if you overcome that hurdle, then the discrimination that Parks suffered comes in. They don't hire disabled. They don't employ disabled. They don't train disabled. They don't promote disabled. And with that, I'll see if the Court has any questions. I'm not sure if there will be any if you can, sir, if they're written in during your time. Good morning, Your Honors. May it please the Court. I'm Greg Einhorn from Chico representing the county of Butte. The county brought motions for summary judgment as to all three plaintiffs. Mr. --"With respect to Mr. Muldown, Judge Carleton heard that motion, considered a great deal of submitted information, prepared a well-reasoned and thoughtful decision, fully supported by facts that are not contested. That is not one single fact that Judge Carleton deemed undisputed has been challenged. The other two plaintiffs, Bass and Parks, that motion was heard before Judge Levy. Judge Levy similarly evaluated a great deal of material, similarly prepared a thoughtful, well-reasoned, thorough decision addressing all of the issues that have been raised here, as they were below, and determined and granted motion for summary judgment for the county. Again, there are a series with respect to both those plaintiffs, Bass and Parks, a series of facts that Judge Levy deemed undisputed that have not been challenged. The factual record, then, is as it is. It has not been challenged here. And the factual record is this. With respect to Ms. Bass, her own doctor, that is, a doctor that she paid for, her own independent medical evaluator, Dr. Hazelwood, opine, quote, or Bass, quote, is currently incapable of any sustained gainful employment even under the most accommodating and sedentary of circumstances. What is your position with respect to opposing counsel's assertion that she has either improved or decided that she's willing to suffer and be employed anyway, and that the case should essentially be reopened? What just procedurally, what is your thought about that? Thank you, Your Honor. There are cases from this circuit which hold that if the time in question is when the matter is evaluated by the employer, that is the relevant time frame, that's when decisions are made. If the person is, quote, disabled under the ADA, then that evaluation is made then and there. So you're – if I understand your – let me just make sure I understand where you're going with this. So your position is that if the employer properly interpreted the facts as of the time the employer acted, that something that happens years later turns out to be completely irrelevant to the employer's decision, whether it was discriminatory or permissible. Precisely. Otherwise, how can you manage this whole process? You have to manage it based on what's on the ground at the time, not on what's speculative. And in here you have to What if – what if the additional evidence is somehow related to that time period, though? I'm just trying to tease out the sort of procedural question for myself here, thinking it through. So let's say there's new evidence for some reason concerning the time period at which the employer was acting, just newly discovered for some reason, but it still relates back. What should happen in that circumstance? Yeah. That might be the subject of a 60B motion, which I think was attempted here and denied by Judge Levy. That would go What do we do with it up here? It's outside the scope of anything that's under review of this Court. There's nothing being presented here, as I understand it, as to what evidence existed at the time that the decisions were made. This is only after the fact, two, three years after Ms. Bass applied for and received disability retirement, after Ms. Bass applied for and received Social Security disability retirement. In other words, that all happened at the end of 2002 and the beginning of 2003. Now, here we are in 2006, and it's being presented. Well, she's made, as I understand it, and of course, I'm taking this at face value, she's made a miraculous recovery and now can be gainfully employed somehow. To open up this case and subject the county to more litigation is not warranted. The Court simply, this Court doesn't have the jurisdiction, I believe, to do that, and then to remand it. Otherwise, there would be no finality in any case such as this. There's no presentation as to anything erroneous at the time of the employment decisions. If it were, Ms. Bass, you know, she made representations to various governmental entities about her status at the time, being unable to work. That's why she received the benefits that she did. With respect to a couple comments that Mr. Hubbard Sr. made, he said, quote, John Muldown became disabled on the job. Now, that's not accurate. Mr. Muldown admitted through his counsel, and I can provide you with the citation. It's in the supplemental excerpt of record that he was not disabled under the ADA. And that's at the supplemental excerpt at page 162. And I'm quoting from counsel's brief. Quote, Muldown freely admits that his physical abilities are limited instead of substantially limited. He's admitting, freely, that he is not disabled under the ADA. He claims he was regarded as disabled under the ADA. Now, Judge Carlton disagrees based on the facts. And the facts are not at all in dispute. And the facts were actually recited by Mr. Hubbard before Your Honors. The facts are that Mr. Muldown was offered at least one position and had interactive process with other positions. That absolutely runs counter to a claim that Judge Carlton held that the county regarded him as disabled. Regarded as disabled means not just that he couldn't do the job for which he had been working for many years, patrol deputy, but was regarded as disabled from a broad range of jobs. The county offered him a job. Mr. Hubbard also said that the doctor, I believe he said that he was unable to perform the job because his doctor said that there would be inmate contact. There was a job that Mr. Muldown wanted. It was a bail-control job. The county worked at developing and configuring that job so that Mr. Muldown could do it. His doctor, a chiropractor, nixed it. The county then went through the same analysis and reconfigured a jail-control room job, different job, reconfigured it so that Mr. Muldown would retain his pay and benefits. And Mr. Muldown rejected the job because he didn't believe that the county could give him proper assurances of retaliation, even though the county offered to provide those assurances in writing. And, again, that's in the record. Those are undisputed facts recited by Judge Carleton. Mr. Muldown held the key to his employment and rejected it. As Judge Carleton said, he could have selected the job, taken the job. If there was retaliation, it could have been addressed then. But he cut that short. Mr. Hubbard talks about the county's failure to accommodate with respect to Mr. Muldown. Again, the record is clear. It's just the opposite happened. The county provided the job. But what's noteworthy is that, and this is pointed out in the brief, the county wasn't obligated to accommodate Mr. Muldown. The remedy of accommodation does not arise when the plaintiff is regarded as disabled as opposed to actually disabled under the Act. The same is true for Parks. Again, there's a claim that Parks was disabled under the ADA. Again, this is the supplemental expert for record at page 143. And Parks, quote, admits, this is from counsel, Parks admits his disabilities are limited instead of substantially limited. Parks claimed he was regarded as disabled, and that was dealt with by Judge Levy, who said, no, he can't do the job of patrol deputy. His doctor says he can't do a job of patrol deputy. The county wasn't regarding him as anything other than he was. But being precluded from one job does not render you regarded as disabled. Again, you're able to do many types of jobs. It's undisputed that as soon as he applied for and received his safety retirement, taking half of his salary tax-free for the rest of his life, he took a job as an HVAC fellow, and he's been working ever since. And there's no duty to accommodate, but the record shows that there was an attempt to find him alternative county employment. What Mr. Parks wanted was a job that didn't exist. He wanted a non-law enforcement job, but that paid safety benefits. And, of course, the county isn't obligated to provide a job that doesn't exist. If Your Honor asked about a vacancy, this was even one step beyond that, because you can't create county butte, if you don't know the county, can create a job that's not a safety job and put PERS safety retirements on it.  Okay. Just, I don't know if the Court has any questions about the state acts and so forth. I had one question. Was there a FEHA claim even brought? No. Okay. And there's no reason why one could not have been. Okay. So we're purely looking at okay. Thank you. All right. Are there any further questions on any of these? No. Thank you, counsel. Thank you, Your Honor. Could I make one request of the Plaintiff's counsel? Our daysheet shows only one of you, and when you give the extra citations to the clerk, would you be kind enough to both sign in so we know exactly who was arguing? I'd appreciate that. Your Honors, I have two issues that I'm going to address, and I'll be very brief regarding Appellee's counsel's assertions. The first pertains to Judge Carlton's well-reasoned order at page 259, and it states, Plaintiff refused, and we're talking about the job now as a jailroom officer, nothing else. Not a control officer, not a jailroom control officer, but a jailroom officer. Finding, Plaintiff refused this position, however, because he was not satisfied with the assurances offered to him regarding non-retaliation. That's absolutely incorrect. The Statement of Undisputed Facts says, Muldoon's doctor felt that Muldoon could not perform the duties of a jailroom officer because of his disability and refused to sign off for the transfer, and that was the only job in that entire county that Deputy Muldoon was ever offered. Now, that has to create a triable issue of fact in and of itself. I mean, was he, did he turn it down because he wanted some assurance that could never come against retaliation for his discrimination, or did his doctor say, wait, you can't do that? And that's all I'm going to address. Thank you. Thank you. Hello again. With respect to Bass, I'll deal with Bass first and then Parks. With respect to Bass, Dr. Hazelwood is one of the best doctors in the area, but he can't predict the future. I never, I agree that the employer's knowledge when making a decision should probably be limited to what they actually knew and not the prospect of future events, but I also never said that her, that she miraculously improved as the, as the defendants suggest, excuse me, my, Mr. Einhorn suggests. I never said she got better. I never said that her situation improved. The 28J letter and the credo indication didn't indicate that either. As far as I know, I believe her situation has remained the same. Second, I also told the district court an oral argument that I thought she still wanted to work. He said if I offered her a job, this is in the excerpts of record, if I offered her her old job right now, would she take it? And with some hemming and hawing, because I didn't think the district court could give her her old job back, I said, yes, she wanted to work. So it was before the district court. Second, there is a little known and seldom used class of regarded as disabled, and this was also raised before the district court, and that is disability where an employer requires 100%, a return to 100% health before an employee, an injured employee can be allowed to work. Now, in those circumstances, there is case law that says such a policy is discriminatory. Well, excuse me, is the regarding of that employee as a disabled individual under the ADA. But notwithstanding that, I agree that employers are not required to provide reasonable accommodations to disabled employees who are regarded as such under the ADA. But under California law, you have to keep your eye on the two distinct standards. Both California law and the ADA have the same rights. California Civil Code Section 51F and 54.1F made sure of that, and both statutes have the same rights. So when you're looking at a disabled person and looking at their rights under the ADA, you have to look at them as the rights of a disabled person under the ADA and the rights of a disabled person under California law. And under the rights of a disabled person under California law, which is only limiting, Parks was disabled. He was actually disabled. It wasn't regarded as such. When you read the case law involving disability and disabled individuals under California law, it's incredibly broad. Limitation, you don't Why did, why isn't it, why wasn't this brought as a FEHA claim where that broad definition clearly applies? I would argue that it clearly applies based on the plain meaning of the act. That actually isn't my question. Was there some procedural or legal reason that precluded these cases being brought under FEHA? Yeah, no one would take Deputy Muldown, Deputy Parks, or Dispatcher Bass's case. I took them in. I said, listen, I'm an ADA lawyer. I know the ADA. I know the UNRRA Act, and I know the Disabled Persons Act. I don't know FEHA. I said, the ADA incorporates Title I, or excuse me, the UNRRA incorporates Title I, so these are the statutes I'm going to bring them under, and they agreed. That's why it wasn't, it wasn't included in this lawsuit. I'm very good at those three statutes. The other one, I don't have nearly as much experience in. Does that answer your question? It does. That's candid. Thank you. Thank you. The matters just argued are submitted for decision.
judges: Schroeder, Graber, Duffy